FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2017 APR 14 PM 5: 35

CLERK'S OFFICE
AT BALTIMORE

BY_____DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff,*<br><br>v.<br><br>LORI A. PARRY,<br>*Defendant.* | Criminal No. ELH-15-0416 |

## MEMORANDUM OPINION

This Memorandum Opinion addresses defendant Lori Parry's "Motion For Release Pending Appeal." ECF 90 ("Motion"). The Motion was filed pursuant to 18 U.S.C. § 3143.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall deny the Motion.

### I. Procedural Background

On September 30, 2016, following four days of testimony, a jury in the District Court of Maryland convicted Lori Parry, defendant, of the three charges contained in the Superseding Indictment (ECF 28): false statement or fraud to obtain federal employees' compensation, in violation of 18 U.S.C. § 1920; theft of government property, in violation of 18 U.S.C. § 641; and false statement, in violation of 18 U.S.C. § 1001(a)(2). *See* ECF 65 (Verdict).

Sentencing was held on January 19, 2017. ECF 82. As to each count, the Court imposed concurrent terms of incarceration of twelve months and one day. *See* ECF 83. In addition, the defendant was ordered to pay restitution of $214,227.00. The term of imprisonment was well below the advisory sentencing guideline range of 21 to 27 months' incarceration (ECF 84), and also below the two-year sentence recommended by the government. *See* ECF 71. At the

conclusion of the sentencing, I granted Ms. Parry 60 days to self-surrender, *i.e.*, until March 20, 2017. *See* ECF 83.

Ms. Parry noted an appeal to the Fourth Circuit on January 25, 2017. *See* ECF 85. That appeal is pending.

On March 7, 2017, almost two months after the sentencing on January 19, 2017, and about two weeks before Ms. Parry was due to surrender, she filed the Motion at issue. ECF 90. The government filed an opposition (ECF 91), and Ms. Parry filed a reply. ECF 95.

In her Motion, Ms. Parry asserted, *inter alia*: "Due to her short sentence, and also due to the typical lifespan of a post-trial criminal appeal, Ms. Parry will very likely serve the majority, if not all, of her sentence before a decision is made by the Fourth Circuit." ECF 90 at 2. Moreover, she asserted: "This appeal is not for the purpose of delay." *Id.*

In its opposition, the government conceded that Ms. Parry is not a danger to the community, nor is she likely to flee if released pending appeal. ECF 91 at 3. However, the government relied on the statutory presumption against release in 18 U.S.C. § 3143(b), and claimed that Ms. Parry could not show a likelihood of success on appeal, as required by 18 U.S.C. § 3143(b)(1)(B).

Because appellate counsel was only recently retained, Ms. Parry requested in the reply "a short window . . . so that they may properly plead a case under U.S.C. § 3143(b)." ECF 95 at 2-3. To that end, the defense sought a 30-day extension of Ms. Parry's surrender date, so that counsel could obtain the relevant transcripts and brief "the final prong under 3143(b)." *Id.* at 3. To deny the request, argued Ms. Parry, would be tantamount to a denial of the opportunity to "reach the merits of her motion . . . ." ECF 95 at 4.

In view of the foregoing, by Order of March 16, 2017, I extended Ms. Parry's surrender to April 24, 2017. ECF 96. I also allowed Ms. Parry's counsel to supplement the Motion by addressing grounds for likelihood of success on the merits of the appeal.

Ms. Parry filed her supplemental brief on March 31, 2017. ECF 101. I shall refer to Ms. Parry's original Motion and to her supplement collectively as the "Motion." The government filed a supplemental opposition on April 7, 2017. ECF 105. I shall refer to both governmental submissions collectively as the "Opposition." Ms. Parry filed a second reply on April 10, 2017. ECF 106 ("Reply").

## II. Discussion

### A.

The Bail Reform Act of 1984 "creates a presumption against release pending appeal." *See United States v. Chilingirian*, 280 F.3d 704, 709 (6th Cir. 2002). Under 18 U.S.C. § 3143(b), if the defendant was sentenced to a term of imprisonment, the court "shall" detain the defendant pending appeal unless the court finds, by clear and convincing evidence, that the defendant is not likely to flee and does not pose a danger to the community. In addition, the court must make other discrete findings, also by clear and convincing evidence. Of relevance here, the court must determine that the appeal is not for the purpose of delay that and that it "raises a substantial question of law or fact likely to result in – (i) reversal [or] ii) an order for a new trial . . . ." 18 U.S.C. § 3143(b)(1)(B).

In particular, § 3143(b) of 18 U.S.C. provides, in pertinent part (emphasis added):

> [T]he judicial officer *shall* order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal . . . be detained, unless the judicial officer finds (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the community if released . . . and *(B) that the appeal* is not for the purpose of delay and *raises a*

3

*substantial question of law or fact likely to result in (i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.*

As indicated in the statute, the court must first find that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released pending appeal. In this case, it is undisputed that Ms. Parry is not likely to flee, and that she does not pose a danger to the safety of any other person. Thus, neither criterion is an issue.

Second, the court must find that the appeal is not for the purpose of delay. I shall assume, *arguendo*, that the appeal is not for the purpose of delay.[1]

Third, the court must find that the question presented on appeal is a "substantial" one. This means that the appeal raises a "'close question or one that very well could be decided the other way.'" *United States v. Steinhorn*, 927 F.2d 195, 196 (4th Cir. 1991) (per curiam) (quoting *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985)). "'Whether a question is "substantial" must be determined on a case-by-case basis.'" *Steinhorn*, 927 F.2d at 196 (citation omitted).

Finally, if the matter of a substantial question is decided in favor of the defendant, the court must determine "whether the substantial question is important enough to warrant reversal or a new trial on *all* counts for which the district court imprisoned the defendant." *Steinhorn*, 927 F.2d at 196 (emphasis added) (citing *United States v. Miller*, 753 F.2d 19, 23-24 (3rd Cir. 1985)); *see also Morison v. United States*, 486 U.S. 1306, 1306-07 (1988) (Rehnquist, C. J., sitting as Circuit Justice) (concluding that defendant was not entitled to bail pending consideration of his petition for writ of certiorari, because even if he raised a substantial question

---

[1] The government cogently contends that Ms. Parry has not met her burden of showing that the appeal is not for the purpose of delay. *See* ECF 105 at 3 n.1; ECF 91 at 3-4. Nevertheless, in light of my decision as to other factors, I need not resolve this issue.

4

with respect to his espionage conviction, he failed to do so with respect to his conviction for theft of government property).

I shall focus on the question of whether the appeal raises a substantial question of law or fact that is likely to result in reversal or a new trial. Ms. Parry has identified three issues in support of her claim that the appeal will raise a substantial question that renders it likely to result in reversal or an order for a new trial. I discuss each, in turn.

**B.**

Ms. Parry contends that this Court erred by failing to suppress her pretrial oral and written statements. These statements were provided by Ms. Parry to agents of the United States Postal Service, Office of Inspector General, at an interview conducted during Ms. Parry's shift at the post office in Baltimore. The interview began late on the evening of April 23, 2013, as Ms. Parry worked the "graveyard" shift.

Initially, Ms. Parry urged suppression of her statements based on an alleged violation of her rights under the Fifth Amendment and *Miranda v. Arizona*, 384 U.S. 436 (1966). *See* ECF 17 (motion to suppress). The Court held an evidentiary motion hearing on February 19, 2016 (ECF 21), at which the Court heard testimony from the two postal agents: Special Agent Christopher Murray and Special Agent Ryan Sublett.

After the evidence was presented, the defense asked to submit additional briefing with respect to a "*Garrity* issue," based on *Garrity v. New Jersey*, 385 U.S. 493 (1967). I granted that request. The defendant's supplemental motion to suppress is found at ECF 24. There, the defense urged the Court to suppress the defendant's statement on the ground that the agents failed to comply with *Garrity*. In addition, the defendant renewed her claim of a violation of her rights under *Miranda*. The government's opposition is at ECF 35.

I held another motion hearing on March 18, 2016, at which argument was presented. ECF 36. Thereafter, I delivered an oral ruling. *See* ECF 97 (Transcript). In particular, I found that the defendant was advised of her *Garrity* rights, both in writing and orally. *Id.* at 26. Moreover, I was satisfied that the defendant's statements were not coerced (*id.* at 24, 26) and that the interview was voluntary under the Due Process Clause. *Id.* at 32. Further, I concluded that Ms. Parry was not in custody at the time of the interview for purposes of *Miranda*. *Id.* at 26-32.

Ms. Parry now asserts arguments that were never advanced during the pretrial suppression hearing. She argues, for the first time, that her statements were the product of coercion because United States Postal Regulations required Ms. Parry to cooperate with the investigators and because her failure to do so could have been grounds for disciplinary or other legal action. *See* ECF 101 at 5. The defense cites, for the first time, 39 C.F.R. § 230.3(a) and §§ 665.3 and 665.6 of the United States Postal Service Employee and Labor Relations Manual. And, she contends that she was "subject to the unlawful Hobson's choice protected by *Garrity*." ECF 101 at 7.

In addition, the defendant contends that the Court erred in failing to suppress the statements as involuntary. Further, she reiterates that the interview was custodial, without the benefit of the warnings required by *Mirana v. Arizona*.

In her Reply (ECF 106), the defendant argues that the issue of suppression "is a close call." *Id.* at 2. She also points out that her *Garrity* argument, in the context of a postal employee, is similar to one that will be heard by the Tenth Circuit in the case of *United States v. Jeffrey Lemon, Jr.*, Appeal No. 16-6213. *See* ECF 106 at 2. Ms. Parry seems to suggest that, because the Tenth Circuit has granted oral argument, this validates her *Garrity* contention, *i.e.*, that she lacked "a meaningful choice to decline to speak to OIG agents, considering her

6

obligations as a USPS employee," and that this "is a novel issue in the Fourth Circuit, and is one that if ruled in her favor would favor a reversal." Reply, ECF 106 at 2. Ms. Parry acknowledges, however, that other issues are also raised in *Lemon*, and there is no indication as to which ground(s) led the Tenth Circuit to grant oral argument.

I have obtained and reviewed the appellate briefs in *Lemon*. In its brief, the government points out that "there was no evidence in the record that Mr. Lemon was even aware of USPS regulations requiring to him [sic] to 'cooperate' with OIG agents." Government's brief at 47.[2] The same is certainly so in this case. The issue was not raised by the defense, and there was absolutely no evidence in the record that Ms. Parry was aware of any USPS regulations requiring her to cooperate with OIG agents. Moreover, in *Lemon* the government has cited cases for the proposition that agency regulations that require an employee to cooperate do not convert an interview into a custodial one. *Lemon*, Government Brief at 47; *see, e.g., United States v. Palmquist*, 712 F.3d 640 (1st Cir. 2013).

In this regard, it is worth noting that in my oral ruling, I found: "First, there is absolutely no evidence in this record that the defendant was ever threatened with any adverse employment consequence if she declined to submit to an interview.... She was told the interview was voluntary." ECF 97 at 23-24.

It would seem to me that the failure to raise the regulatory argument now advanced by Ms. Parry does not amount to plain error. *See* Fed. R. Crim. P. 52(b). And, even if my factual or legal findings were erroneous, such that the statement was improperly admitted, the remaining evidence, in my view, would render the error harmless. *See* Fed. R. Crim. P. 52(a).

---

[2] I have cited to the electronic pagination. However, the actual page number on the brief is 36.

7

In sum, I do not believe that the defendant's challenge to the Court's ruling as to her pretrial statements is likely to result in a reversal or a new trial.

## C.

The defense claims that the Court erred by denying defendant's motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure. Noting that the "Government did not call one expert witness in this case" (ECF 101 at 7), the defendant asserts, *id.* at 7-8: "Without expert testimony, the jury in this case would need to speculate to return to a verdict of guilty." However, the defendant does not make clear whether or why that assertion applies to the conviction for false statement under 18 U.S.C. § 1001.

In any event, "appellate reversal on grounds of insufficient evidence . . . will be confined to cases where the prosecution's failure is clear." *Burks v. United States*, 437 U.S. 1, 17 (1978); *see United States v. Green*, 599 F.3d 360, 367 (4th Cir. 2010). To determine "whether the evidence was sufficient to support a conviction, a reviewing court must determine whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Madrigal-Valadez*, 561 F.3d 370, 374 (4th Cir. 2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see also Green*, 599 F.3d at 367.

The court "review[s] the sufficiency of the evidence to support a conviction by determining whether there is substantial evidence in the record, when viewed in the light most favorable to the government, to support the conviction." *Madrigal-Valadez*, 561 F.3d at 374. "Substantial evidence" is defined as "'evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt.'" *Green*, 599 F.3d at 367 (quoting *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc)).

As the government observes in its Opposition, the defendant cites no authority for the proposition that the government was required to present expert testimony in order to find that the defendant made false representations. ECF 105 at 5. I am unaware of any authority that required the government to present a medical or other expert in order to prove guilt as to any of the charges.

The initial injury itself and the subsequent surgeries that defendant underwent were never in dispute. But, as the government puts it, "the jury saw with their own eyes" (ECF 105 at 5-6) the substantial evidence that supported the convictions.

In my view, this argument lacks merit and it not likely to result in a reversal or a new trial.

### D.

The defense contends that, in the prosecutor's rebuttal argument, "the prosecutor went too far in that they [sic] remarked not only on witnesses that testified at trial, but also suggested that Ms. Parry should herself had called [sic] an expert witness." ECF 101 at 10. According to the defendant, the government engaged in "improper burden shifting," which "should not have been allowed." *Id.* at 11.

Notably, the defense did not point out what I consider critical comments of defense counsel that sparked the contested rebuttal argument. These omissions are significant, because they provide important context.

In closing argument, defense counsel asserted, *inter alia*, ECF 100 (transcript) at 45-6:

> Not one treating physician came in here from Mrs. Parry's past to say that Mrs. Parry's therapy did not or could not include yard work. Not one medical doctor came in here to say that was inconsistent with what they'd advised her. Not one expert, not one medical expert came in here to say that the yard work that she was performing was somehow inconsistent with her condition. And that's critical.

9

***

> No doctor came in here to say she could not do that. And so with the burden of proof, you would think the government would have called an expert to say that she should have been able to do that with her condition, that they could not do that. They didn't do it. And that's important.

Later, defense counsel stated, ECF 100 at 54-55: "By the way, did we hear from Daniel Eppart? Did Daniel Eppart corroborate that he'd given permission to Michael Ring to use his name? No, of course not." And, defense counsel added, *id.* at 55: "Did Dave Atkins come in here and corroborate Michael Ring? Of course not." Defense counsel continued, *id.* "Did we hear from anyone at the bowling alley to see if they had seen Ms. Parry bowling? Of course not. . . . If that evidence existed, we would have seen it."

At the conclusion of the defendant's closing argument, the prosecutor told the Court, at the bench, of his intent "to argue that the defense had the ability to ask the questions and call the witnesses that they repeatedly mentioned." ECF 100 at 60. The prosecutor also pointed out that in the defense's closing, defense counsel "repeatedly mentioned about questions that weren't asked to Special Agent Sublett, that they didn't call various witnesses, they didn't call doctors." *Id.*

A recess ensued, during which the Court attempted quickly to research the issue. I also prepared a missing witness instruction, as I concluded that such a jury instruction was "absolutely . . . generated by defense counsel's argument in closing." *Id.* at 64.

In sum, I ruled that the prosecutor could argue in rebuttal, consistent with the missing witness instruction, and was also free to point out that defense counsel could have asked the questions he criticized the prosecutor for failing to ask. *Id.* at 66-67. Notably, as to rebuttal, I cautioned the prosecutor "to tread carefully" because it is "always a dangerous area to the extent there's any encroachment by argument on a defendant's right to remain silent." *Id.* at 64.

10

The prosecutor heeded that warning. In rebuttal, the prosecutor argued, ECF 100 at 84; *see also* ECF 101 at 10:

> Now, there's a lot of talk in closing argument about things and people and witnesses and opinions that you didn't hear. And I want to keep in mind, again, critical point, the defense has zero burden of proof. None. You've heard that. You will hear it probably more. They have no burden. But they can call witnesses just like anybody else. They can call doctors, just like anyone else. In fact, you see evidence of that because they called a witness and they asked questions and they put in evidence. Those doctors and other individuals are no more under the control of the government than they are of the defense. They could have called them. And you're going to hear an instruction about that.

A prosecutor's closing remarks warrant a new trial if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *United States v. Francisco*, 35 F.3d 116, 120 (4th Cir. 1994) (per curiam) (quotations and citation omitted). In other words, reversal is proper if the remarks were improper and the remarks "prejudically affected the defendant's substantial rights so as to deprive her of a fair trial." *Id.*; *see United States v. Bennett*, 984 F.2d 597, 608 (4th Cir.) (1993) (per curiam).

Put another way, the question in assessing improper prosecutorial comment is "whether the proceeding at issue was rendered fundamentally unfair by the improper argument." *Lawson v. Dixon*, 3 F.3d 743, 755 (4th Cir. 1993) (habeas case). In this regard, the court considers "the nature of the comments, the nature and quantum of the evidence before the jury, the arguments of opposing counsel, the judge's charge, and whether the errors were isolated or repeated." *Id.* (citations omitted).

In my view, the comments of the prosecutor were properly responsive to the defendant's closing argument, and did not in any way suggest that the burden of proof shifted to the defendant. *See, e.g., United States v. Sherriff*, 546 F.2d 604, 608 (5th Cir. 1977).

Even assuming that rebuttal comments were improper, the question of reversal "must be gauged from the facts of each trial." *United States v. Harrison*, 716 F.2d 1050, 1051 (4th Cir. 1983). Assuming error, the Court generally considers four factors to determine whether the error warrants reversal: "(1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of the competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters." *Id.* at 1052 (citing *United States v. Leon*, 534 F.2d 667 (6th Cir. 1976)).

A review of those factors does not support either a reversal or a new trial. The evidence of guilt was quite substantial. The prosecutor did not make inflammatory remarks. And the court's instructions made clear that the government had a heavy burden of proof, and that the defendant was presumed innocent, with no burden to prove her innocence.

### III. Conclusion

I am satisfied that the questions raised by the defendant are not likely to warrant reversal or a new trial. Therefore, the Motion is denied.

However, because the defendant may seek to challenge this Court's ruling on appeal, I will extend the defendant's reporting deadline to and including 2:00 p.m. on May 22, 2017.

An Order follows.

Date: April 14, 2017                         /s/
                                             Ellen L. Hollander
                                             United States District Judge